## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| CHRIS KINGSBURY and EMILIANO LINA on behalf of themselves and all others similarly situated, | : : : : : | No. 19-cv-1299 (VLB) |
|  | : | March 4, 2021 |
| Plaintiffs, | : : |  |
| v. | : : |  |
| ULTIMATE NUTRITION, INC. and PROSTAR, INC. Defendants. | : : : |  |

## MEMORANDUM OF DECISION DENYING JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT AGREEMENT AND RELATED MATTERS, DKT. 44

Before the Court is the parties' joint motion for preliminary approval of the proposed class settlement agreement and related procedural matters. The Court has reviewed the terms of the proposed settlement agreement and release and the accompanying exhibits closely. Because the scope of the release is overly broad and the proposed notice does not fairly and accurately describe the risks and benefits to the putative class members, the Court DENIES the parties' motion for preliminary approval. The Court finds the related procedural issues moot.

## Procedural History

On or around August 17, 2019, Defendants Ultimate Nutrition, Inc. and Prostar. Inc. terminated approximately 150 employees in a mass layoff/plant closure. [Dkt. 8 (Am. Compl.) ¶ 101]. A few days later, Plaintiff Chris Kingsbury, later joined by Emiliano Lina, filed sued against Ultimate Nutrition and Prostar, on

behalf of themselves and all other similarly situated employees, alleging that the Defendants violated the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 ("WARN") by failing to provide the affected employees with 60-days written notice of their terminations. [Dkt. 8 (Am. Compl.)]. Plaintiffs sought 60-days of backpay and ERISA benefits pursuant to the WARN Act. [Am. Compl. ¶ 1].

The Defendants argued that they were not employers within the meaning of the WARN Act because the Defendants did not independently have 100 or more employees. [Dkt. 8 (Answer) at 5]. Further, the Defendants argued, *inter alia*: (1) that the various locations were their employees worked do not constitute a single site of employment, (2) that the employees did not suffer an "employment loss," (3) that the terminations were caused by business circumstances that were not reasonably foreseeable pursuant to 29 U.S.C. § 2102(b)(2)(A), (4) that the class is not representative because it does not include class representatives from both entities, and (5) any liability should be reduced because the Defendants acted in good faith and had a reasonable grounds for believing that neither entity was subject to the WARN Act. *See* [Dkt. 32 (26(f) report) at 3-6].

In the Rule 26(f) report filed in November 2019, the parties represented that settlement was unlikely at that time. *Id*. at 7. After engaging in written discovery in early 2020, the parties represented that settlement negotiations were ongoing. [Dkt. 43 (Joint Status Report) at 3]. The report stated that the Defendants were still operating, but insolvent on their balance sheets. *Id*. at 4. About two months later, the parties reached a proposed class settlement resolving the claims of 108 former

employees for $75,000, inclusive of class counsels' fees, expenses, and class representatives' enhanced compensation. [Dkt. 44].

The parties filed a joint motion for preliminary approval of the settlement agreement and sought an order approving the form and manner of notice to the settlement class, an order scheduling a fairness hearing for consideration and approval of the settlement agreement, and approval of the settlement agreement and dismissal of the action thereafter. *Id*. After reviewing the terms of the proposed settlement agreement and accompanying exhibits closely, the Court ordered the parties to address whether the settlement was intended to release class members' claims arising from their termination but independent of any alleged violations of the WARN Act, e.g. employment discrimination or wrongful termination claims [Dkt. 46]. The parties' supplemental brief responded in the affirmative: the settlement would resolve all potential claims arising from the affected employees' terminations regardless of the legal or factual basis for those potential claims. [Dkt. 47 (Joint Suppl. Br.)]

## Discussion

Pursuant to Federal Rule of Civil Procedure 23(e)(2), "if the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate," which is guided by enumerated factors. When reviewing the fairness of a proposed settlement, "special care must be taken to ensure that the release of a claim not asserted within a class action or not shared alike by all class members does not represent an 'advantage to the class

... by the uncompensated sacrifice of claims of members, whether few or many.' "

*TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)(citing *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 19 (2d Cir. 1981)).

Paragraph 5 of the proposed settlement agreement provides:

> Except for the rights arising out of, provided for, or reserved in the Settlement Agreement, each Settlement Class Member, (but not any Opt-outs, defined below), for and on behalf of themselves, and their respective predecessors, successors, assigns, heirs, personal representatives and estates (collectively, the "Releasing Parties"), do hereby fully and forever release and discharge Prostar and Ultimate and each of their respective officers, directors, shareholders, affiliates, subsidiaries, agents, employees, partners, members, accountants, attorneys, representatives and other agents, and all of their respective predecessors, successors and assigns (collectively, the "Released Parties"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or disclosed, which the Releasing Parties had or may now have against the Released Parties, *which arise out of, relate to, or are connected with the termination of their employment* (the "Released Claims").

[Dkt. 44-1 (Settlement Agreement) ¶ 5] (emphasis added).

Congress enacted the notification requirements under the WARN Act to blunt the economic impact on workers and their local communities when plants are suddenly closed. *See* 134 Cong. Rec. E2443-02 (1988)(statement of Rep. Murphy), 1988 WL 174033. The WARN Act conveys no enforceable legal rights apart from the right to receive 60-days' notice before a "plant closing" or "mass layoff," or such notice as practicable if the employer demonstrates that certain conditions exist. 29 U.S.C. § 2102(a)-(b). An employer who violates the notice requirement is liable for "backpay for each day of the violation." 29 U.S.C. § 2104(a)(1)(A). The WARN Act contains no provision concerning whether employees can be terminated *en mass*;

it simply states the amount of notice covered employers must provide if it elects to lay off its workers under certain conditions.

The unfairness of the proposed agreement is apparent from an examination of its terms. In exchange for a sum of about four days of backpay, ranging from $107.98 to $1,547.40, class members would be releasing all claims "*which arise out of, relate to, or are connected with the termination of their employment.*" *See* [Dkt. 44-2 (Schedule 1 to Settlement Agreement)]. This provision purports to release wholly independent legal claims that rest on a separate factual predicate. For example, whether the Defendants complied with the notice requirement under the WARN Act has no bearing on whether an employee was illegally terminated because of a discriminatory or retaliatory animus in violation of state or federal law. Nor does compliance with the statutory notice requirement address whether an employee's termination constitutes a breach of an employment contract or violates state common law. These laws provide broader remedies for aggrieved employees than the WARN Act. *Compare* 29 U.S.C. § 2104(a)(1)(A) to 42 U.S.C. § 1981(a)(party complaining of intentional discrimination may recover compensatory and punitive damages in addition to relief authorized by § 706(g) of the Civil Rights Act of 1964). These potential claims were not asserted and could not have been asserted in this putative class action because they are not common to the class. As a result, the class members would have released claims related to the Defendants' substantive decision to terminate their employment without any additional compensation.

5

It is well established law in this Circuit that settlement of claims that were not asserted in the litigation on a class basis is only permissible where they arise "out of the identical factual predicate" as the settled conduct. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005). This is because a "…class representative not sharing common interests with other class members [cannot]…endeavor to obtain a better settlement by sacrificing the claims of others at no cost to themselves by throwing the others' claims to the winds." *TBK Partners, Ltd*, 675 F.2d at 462 (quotation and parenthetical omitted). That is precisely what would occur here if the Court were to approve the proposed settlement agreement.

Apart from the unfairness of the terms of the proposed settlement agreement, the parties' proposed notice to class members does not adequately explain the legal effect of paragraph five in "plain, easily understood language" as required by Fed. R. Civ. P. 23(c)(2)(B). [Dkt. 44-5 (Proposed Settlement Notice)]. The notice explains the basis for the alleged WARN Act violation. Apart from inclusion of the entirety of paragraph five, the notice makes no reference to the fact that class members would be waiving all claims arising from their terminations unless they opt out of the class, which requires affirmative action by the class member.

Paragraph five itself does not enumerate the causes of action that "arise out of, relate to, or are connected with the termination of their employment," which might cue an astute reader that they were waiving unrelated claims. Indeed, the Court ordered supplemental briefing to determine whether the parties intended to include this provision because it is boilerplate and is unrelated to the factual

predicate alleged in the Complaint. The Court considered the possibility that its inclusion may have been an oversight. That notion was dispelled by the parties' supplemental briefing. [Dkt. 47].

The likelihood that a class member may fail to appreciate the legal import of the vague and overly broad release language is amplified by the fact that their total proposed recovery is about four days of wages and class members are unlikely to consult independent counsel. [Dkt. 44-2 (Schedule 1 to Settlement Agreement)]; see Fed. R. Civ. P. 23, Advisory Committee's Notes to 2003 Amendment ("The direction that class-certification notice be couched in plain, easily understood language is a reminder of the need to work unremittingly at the difficult task of communicating with class members. It is difficult to provide information about most class actions that is both accurate and easily understood by class members who are not themselves lawyers.").

Lastly, the Court questions whether the class representative and class counsel can adequately represent all members of the class. They propose to have reached a settlement which calls for the release of claims unrelated to the suit and which they do not clearly disclose. Nor do they explain the legal consequence of the release. Given the breath of the proposed release it does not even appear that a class should be confirmed as the claims released do not arise out of similar facts. In response to the Court's inquiry counsel responded noting other courts have approved similar settlements. The Court does not know if those cases were analogous and even if they were, one wrong does not make a right.

In conclusion, the proposed language purporting to release claims that could not have been brought in this litigation renders the settlement facially unfair and unreasonable. The effect of this provision was not adequately described in the proposed notice to class members, such that they may be unaware that by failing to opt out of the settlement they would be releasing claims arising from their termination in addition to alleged WARN Act violations.

Given this defect, the Court makes no findings regarding several provisions of the proposed settlement, including whether class representatives and class counsel had adequately represented the class, and whether the proposal was negotiated at arm's length.

The Court finds the parties have not and cannot establish adequacy of the proposed relief considering the uncertainty of the claims at issue.

## Conclusion

The Court DENIES the parties' joint motion for preliminary approval of the proposed class settlement agreement and the notice to class members. In light of this ruling, the issue of class certification for settlement purposes and the scheduling of a fairness hearing is premature.

The parties' supplemental brief states that the parties will confer to address the scope of the release if the Court is reluctant to approve it. [Dkt. 47 (Joint Suppl. Br.) at 3]. Accordingly, the Court will afford the parties an opportunity to confer and consider filing a revised proposed settlement agreement that narrows the scope of released claims. If the parties fail to file a revised proposed settlement agreement

8

within 35 days of this Order, the Court will assume that settlement efforts have failed and will set a briefing schedule for class certification and a trial date.

Additionally, the parties shall revise any proposed notice of settlement to the class members to specifically reflect the Court's ruling as to why the first proposed settlement agreement was rejected.

IT IS SO ORDERED

_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**


**Dated at Hartford, Connecticut: March 4, 2021**