**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

-------------------------------------------------------------

**CHRIS KINGSBURY and EMILIANO LENA**
**on behalf of themselves and all others**
**similarly situated,**                                    **Case No. 3:19-cv-01299-VLB**


                          **Plaintiffs,**


               **v.**


**ULTIMATE NUTRITION, INC.**

**and**

**PROSTAR, INC.**

                          **Defendants.**
----------------------------------------------------------------

**JOINT MOTION FOR ORDER (1) PRELIMINARILY APPROVING REVISED**
**SETTLEMENT AGREEMENT; (2) APPROVING FORM AND MANNER OF NOTICE**
**TO THE SETTLEMENT CLASS; (3) SCHEDULING A FINAL FAIRNESS HEARING**
**FOR THE FINAL CONSIDERATION AND APPROVAL OF THE SETTLEMENT AND**
**(4) <u>FINALLY APPROVING THE SETTLEMENT AGREEMENT</u>**

Chris Kingsbury and Emiliano Lena (the "<u>Plaintiffs</u>" or "<u>Class Representatives</u>")

on behalf of themselves and on behalf of the individuals named on Schedule 1

(the "<u>Settlement Class</u>")  to the Revised Settlement Agreement and Release (the

"<u>Settlement Agreement</u>")[1], on the one hand, and Prostar, Inc. ("<u>Prostar</u>" or

"<u>Defendant</u>"), on the other hand, sometimes collectively referred to herein as the

"<u>Parties</u>," by and through their respective counsel of record, submit this Joint

Motion for an Order (1)  Preliminarily Approving the Settlement Agreement; (2)

Approving the Form and Manner of Notice to Settlement Class; (3)  Scheduling a

---

[1] The Settlement Agreement is attached hereto as Exhibit 1.

Final Fairness Hearing for the final consideration and approval of the Settlement Agreement; and (4) Finally Approving the Settlement Agreement (the "<u>Joint Motion</u>").   In support of their Joint Motion, the Parties respectfully submit the following:

Introduction

The parties previously submitted a motion for approval of their original settlement agreement, a motion that this Court denied.

The Court's disapproval of the original agreement was based on the inclusion of a release that went beyond claims under the WARN Act. The parties have now revised their agreement such that the only claims released are those under the WARN Act.

The parties further state as follows:

Jurisdiction

1.      This Court has jurisdiction over this Joint Motion under 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).  Venue of this proceeding and this Joint Motion is proper in this district pursuant to 29 U.S.C. § 2104(a)(5).

Background

2.      On August 21, 2019, and as amended thereafter, Plaintiffs filed a *Class Action Complaint* and Jury Demand against Defendant and Ultimate Nutrition, Inc. ("<u>Ultimate</u>") (the "<u>Lawsuit</u>").  The Lawsuit alleges a Rule 23 class claim asserting that Prostar and Ultimate, as a "single employer," violated the Worker Adjustment and Retraining Notification Act of 1988 (29 U.S.C. §§ 2101 – 2109) (the "<u>WARN Act</u>").  The Lawsuit alleges that Prostar and Ultimate employed

more than 100 employees who worked at least 4,000 hours per week within the United States; and that Prostar and Ultimate ordered mass layoffs or plant closings, as defined by the WARN Act, on or about August 17, 2019 and thereafter at facilities located at 7 Corporate Avenue and 21 Hyde Road, Farmington, Connecticut (the "<u>Facilities</u>") that resulted in the loss of employment for at least 50 non-part time employees who worked at or reported to the Facilities.  The Lawsuit further alleges that a class should be certified consisting of the Plaintiffs and the other similarly situated former employees terminated from the Facilities, without cause on their part, on or about August 17, 2019, or as the reasonably expected consequence of, the mass layoffs or plant closings, as defined by the WARN Act.  The Lawsuit further alleges that the Plaintiffs and the other similarly situated former employees terminated on or about August 17, 2019 as the reasonably foreseeable consequence of the mass layoffs or plant closings are "affected employees", as defined by 29 U.S.C. §2101(a)(5); that these former employees did not receive 60 days' advance written notice of termination from Prostar and Ultimate, as required by the WARN Act; and that Prostar and Ultimate failed to pay them 60 days' wages and fringe benefits, as required by the WARN Act.  The Lawsuit further alleges that the proposed class meets the requirements of Fed. R. Civ. P. 23.

3.    On November 15, 2019, Prostar and Ultimate filed an Answer to the Lawsuit (the "<u>Answer</u>").  In the Answer, Prostar and Ultimate each deny that they were a "single employer".  Further, Prostar and Ultimate asserted numerous affirmative defenses, including the "unforeseeable business circumstances"

exception.  Prostar and Ultimate also asserted that each did not independently have one hundred employees, exclusive of part-time employees.  Prostar and Ultimate also asserted that their separate work locations did not constitute a "single site of employment" for purposes of the WARN Act.  Prostar and Ultimate also asserted that their actions were taken in good faith and that each had reasonable grounds for believing that its acts or omissions were not a violation of the WARN Act.

4.     A Scheduling Order was entered on November 26, 2019 and, thereafter, Plaintiffs commenced written discovery .

5.     The parties spoke on January 29, 2020 concerning discovery and began to explore settlement that same day.  In the ensuing months, Prostar and Ultimate provided responses and responsive documents to Plaintiffs' discovery requests which were not subject to an objection.  Prostar admitted in response to Plaintiffs' discovery requests that, while it is currently operating, it is insolvent on a balance sheet basis.

6.     During this same period, the Parties conducted good-faith, arms' length settlement negotiations in an effort to resolve this matter.

7.     While counsel for Plaintiffs and Prostar disagree as to whether Prostar has any obligation or liability under the WARN Act with respect to the claims asserted in the Lawsuit, in order to avoid further costly litigation and the uncertainties and risks associated therewith, the Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action arising from the Lawsuit, and to enter into the Settlement

4

Agreement, according to the terms set forth therein, including certification of a proposed Settlement Class.

## Class Certification

8.      Class certification pursuant to Fed. R. Civ. P. 23 requires that each of the four prerequisites for certification, namely Fed. R. Civ. P. 23 (a)(1), (2), (3) and (4) be met and, in addition, that at least one of the conditions set forth in subparts of Fed. R. Civ. P 23(b), namely 23(b)(1)(A), 23(b)(1)(B)(2) or 23(b)(3), be satisfied. Here, the proposed class, for settlement purposes only, consists of 108 individuals listed on Schedule 1 to the Settlement Agreement, comprised of all former employees of Prostar who worked at or reported to the Facilities until they were laid off, furloughed and/or terminated, without cause on their part, on or about August 17, 2019, within thirty (30) days before that date or in the sixty (60) days thereafter, who do not opt out of the Settlement Classwho worked at the Facilities and were terminated, as a result of the plant closing on or about August 17, 2019, and who did not receive a voluntary payment from one or more Defendant on or after August 17, 2019  that amounted to sixty or more days of pay (the "Settlement Class").  The Parties have agreed for the purposes of settlement only, that all the prerequisites for certification of the proposed Settlement Class are present, as set forth below.

> (a)    Numerosity:  For purposes of the Settlement only, the Parties agree that the numerosity factor of Fed. R. Civ. P. 23(a)(1) is met because the proposed Settlement Class numbers 108 former employees, making joinder impracticable.

(b)  **Commonality:  For purposes of the Settlement only, the Parties agree that common questions of law and fact are applicable to each Settlement Class member, namely, 1) whether a plant closing or mass layoff occurred as defined in the WARN Act; 2) whether Defendant was an "employer" as defined in the WARN Act; 3) whether Defendant was excused from the 60-day notice requirement under the WARN Act; and (4) whether the Defendant was obligated to pay the Settlement Class members sixty days' pay and benefits.  In short, the Parties agree for purposes of the Settlement only that the Settlement Class Members' claims raise nearly identical issues regarding the circumstances surrounding their layoffs and, thus, the alleged violations of the WARN Act.**

(c)  **Typicality:  For purposes of the Settlement only, the Parties agree that the typicality factor of Fed. R. Civ. P. 23(a)(3) is met here as "the claims . . . of [Plaintiffs who are] the representative parties [are] typical of the claims . . . of the class."  The Class Representatives have the same claim based on the same facts as the other proposed Settlement Class Members.**

(d)  **Adequacy of Class Representatives:  For purposes of the Settlement only, the Parties agree that the adequacy factor of Fed. R. Civ. P. 23(a)(4) is also met.  The Class Representatives**

have - and will continue to - diligently prosecute this action, have no conflict of interest with the other proposed Settlement Class Members, and have - and will continue to -diligently prosecute, represent and protect the interests of the proposed Settlement Class.  In addition, the Class Representatives have engaged counsel, namely  Lankenau & Miller LLP and The Gardner Firm, PC, which have, between them, been appointed as class counsel in excess of one hundred (100) WARN Act actions.

9.    For purposes of the Settlement only, the Parties agree that the proposed Settlement Class also meets the requirements of Fed. R. Civ. P.23(b)(2). Common questions of law and fact that affect all members of the proposed Settlement Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons:

(a)    No proposed Settlement Class member has an interest in individually controlling the prosecution of a separate action under the WARN Act.

(b)    No other litigation concerning the WARN Act rights of any proposed Settlement Class member is currently pending to the Parties' knowledge.

(c)    Concentrating all potential litigation concerning the WARN Act rights of the proposed Settlement Class Members in this Court

will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all proposed Settlement Class Members.

(d)    Administration of this action as a class action will not be complicated or difficult because the names and addresses of the proposed Settlement Class Members and their addresses have been established from available records unless otherwise instructed by the proposed Settlement Class member or as updated through the efforts of Class Counsel or the Settlement Administrator.

10.    For the foregoing reasons, the Parties seek a Court order certifying this case as a class action for settlement purposes only as to the WARN Act claims of the proposed Settlement Class Members, and appointing Lankenau & Miller, LLP and The Gardner Firm, P.C. as class counsel and appointing Chris Kingsbury and Emiliano Lena as the Class Representatives.

<u>The Settlement</u>

11.    The Class Representatives and the Defendant ask the Court to approve the Settlement Agreement, for the following reasons:

(a)    The Settlement Agreement reflects the result of arms' length, good faith negotiations.

(b)    The Settlement Agreement reflects the recognition by the Parties that there are significant, complex issues regarding the

application of the WARN Act, and the various cases and regulations interpreting the WARN Act to the facts of the case. In this regard, the Class Representatives and the Defendant disagree as to whether the Defendant had any obligation or liability under the WARN Act with respect to the proposed Settlement Class Members' claims.  If the Named Plaintiffs were successful in the litigation, however, they could have a claim against the Defendant for more than $600,000.

(c)     To avoid extensive, costly litigation over these issues, the Class Representatives and the Defendant, through their respective counsel, engaged in significant negotiations regarding a possible consensual resolution of this litigation.

(d)     The resolution of the WARN Act claims in this Lawsuit is in the Parties' best interests, particularly in light of Prostar's distressed financial condition.  Prior to the reaching of agreement on the original proposed settlement, Prostar provided Class Counsel with reliable documentary evidence demonstrating that there were no unencumbered assets that would be available to pay any judgment or any settlement in this matter. Class Counsel did not deem it in the Class's best interest to litigate towards a larger judgment that could not be executed; that would do nothing for the class members. Accordingly, it was and is the professional judgment of Class

Counsel that the amount negotiated is the best that can be done for the Class, as a practical matter, in this case.

12.    As a result of the Parties' negotiations, and as fully set forth in the Settlement Agreement, the Class Representatives and the Defendant wish to fully and finally compromise, settle and resolve any and all demands, claims, damages and causes of action, present or future, relating to the Class Representatives and the other proposed Settlement Class Members terminations, on the terms and conditions of the Settlement Agreement.  In addition to the certification of the Settlement Class for settlement purposes only, as described above, the other essential terms of the Settlement Agreement are set forth below:

(a)    Prostar shall pay Seventy-Five Thousand Dollars ($75,000) (the "Settlement Amount"), via wire transfer (according to instructions to be supplied by Class Counsel) to The Gardner Firm, PC  within three (3) business days of the Court's entry of the Final Order, approving the Settlement;

(b)    Once received, the Settlement Amount shall be distributed by Class Counsel as follows: (a) a one-time payment of $1,000 each to Chris Kingsbury and Emiliano Lena for their services rendered in this action (the "Service Payments") and (b) the balance, minus one-third for attorneys' fees ("Class Counsel's Fees"), plus expenses of litigation (including costs associated with the production and mailing of the Class Notice and the administration of this Settlement Agreement, estimated to be approximately $5,000) ("Class Counsel's Expenses"), shall be

divided among the proposed Settlement Class Members, as indicated on Schedule 1 to the Settlement Agreement.  The net payments shown on Schedule 1 reflect each Settlement Class Member's pro rata share of the Settlement Amount (after the deduction of Class Counsel's Fees, Class Counsel's Expenses and the Service Payments) and is based on Class Counsel's calculation of the maximum theoretical statutory WARN wage damages of each, with a minimum net amount of $100.

(c)   Prostar shall provide Class Counsel with the last known addresses and Social Security numbers for each Settlement Class member within 10 days of execution of this Settlement Agreement.  Class Counsel shall keep all such Social Security number information strictly confidential and shall not use it for any purpose other than issuing IRS Form 1099s and locating Class Members in connection with the Settlement Agreement.

(d)   In the event that any Settlement Class Member funds remain uncashed upon the 181st day following the initial disbursement of the Settlement Amount, such unclaimed funds ("the "Residual Funds") shall (i) first, be used to make pro rata Settlement distributions to additional Settlement Class Members, if any, who may be identified after Class Counsel have made the distribution from the Settlement Amount and who fall within the Class Definition but who did not appear on

Schedule 1 ("<u>Additional Settlement Class Members</u>"); (ii) second, distributed pro rata to Settlement Class Members through a supplemental distribution so long as Class Counsel determines that such a distribution is feasible, and (iii) if any Residual Funds remain after Settlement Fund disbursements to Additional Class Members (should there be any) or as a supplemental distribution, then last, donated to Farmington Food Pantry, a non-profit 501(c)(3) charitable organization.  No portion of the Residual Funds shall revert to or be retained by the Class Counsel or Prostar for any reason.

(e)    Each Settlement Class Member, (but not any Opt-outs, defined below), for and on behalf of themselves, and their respective predecessors, successors, assigns, heirs, personal representatives and estates (collectively, the "<u>Releasing Parties</u>"), do hereby fully and forever release and discharge Prostar and Ultimate and their respective officers, directors, shareholders, affiliates, subsidiaries, agents, employees, partners, members, accountants, attorneys, representatives and other agents, and all of their respective predecessors, successors and assigns (collectively, the "<u>Released Parties</u>"), of and from any and all claims arising under the WARN Act, 29 U.S.C. § 2101 et seq. (the "<u>Released Claims</u>").

(f)  **The Parties agree that a Stipulation of Dismissal with Prejudice (substantially in the form attached to the Settlement as "Exhibit A") will be filed as to Ultimate within three (3) business days of execution of this Settlement Agreement, with the condition that the claims in the Lawsuit against Ultimate may be reinstated by Plaintiffs if the Court does not approve this Settlement Agreement or if the Settlement Amount is not paid by wire to The Gardner Firm, PC within three business days of the Court's entry of the Final Order, approving the Settlement Agreement.**

(g)  **Approval of the Settlement Agreement by the Court, combined with full consummation of Prostar's obligations under the Settlement Agreement, shall operate as a full and complete release of the Released Claims by the Releasing Parties against the Released Parties.**

(h)  **All notices and disbursements to the proposed Settlement Class Members will be made by first class mail to their last known addresses as set forth on Schedule 1, unless otherwise instructed by the proposed Settlement Class Member.**

(i)  **The Parties agree that they are compromising and settling disputed litigation.  Each of the Parties shall bear their own attorney's fees, expenses, and court costs.  Each of the Parties agrees it shall not commence or continue any lawsuit**

that is inconsistent with any provision of the Settlement
Agreement.

(j)     The Parties mutually agree not to disparage one another.

**The Contents of the Class Notice**

13.     The Parties submit that the proposed Class Notice, a copy of which
is attached to the Settlement Agreement as "<u>Exhibit C</u>", meets the requirements
of Fed. R. Civ.P. 23(c)(2)(B).  That rule, in pertinent part, provides as follows:

> "The notice must clearly and concisely state in plain, easily
> understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an
> attorney if the    member so desires;
>
> (v) that the court will exclude from the class any member who
> requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule
> 23(c)(3)."

14.     The proposed Class Notice satisfies each of the foregoing
requirements.  The Notice states the nature of the action, the Class claims, and
the issues and defenses.  The Notice also states that a proposed Settlement
Class Member may enter an appearance through counsel and that the Settlement
Agreement, when approved, will be binding on all proposed Settlement Class
Members.  The Notice also sets forth the terms of the proposed Settlement
Agreement and the right of each proposed Settlement Class Member to opt-out or
object to the proposed Settlement and the time and manner for doing so. The

Notice also provides the proposed Settlement Class Members with their individualized, projected Net Settlement Claim Amounts. The Notice also apprises the proposed Settlement Class, among other things, that complete information regarding the Settlement Agreement is available upon request from Class Counsel that any proposed Settlement Class Member may appear and be heard at the hearing on approval of the Settlement Agreement. In addition, the Notice informs the proposed Settlement Class Members of the request for the approval of attorneys' fees to Class Counsel.  See Fed.R.Civ.P. 23(h).  Further, the notice explains that the parties previously submitted a motion for approval of their settlement agreement, a motion that this Court denied based on the inclusion of a release that went beyond claims under the WARN Act. The parties have now revised their agreement such that the only claims released are those under the WARN Act.

## The Manner of Notice

15.    As to the manner of giving notice, Fed. R. Civ.P. 23(c)(2)B) provides, in pertinent part, as follows:

> "For any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort."

16.    An individual mailing to each class members' last known address has been held to satisfy the "best notice practicable" test.  *Eisen v. Carlisle & Jacquelin et al.*, 417 U.S. 156 (1974) (individual mailings satisfy Rule 23 (c)(2)).

17.     The Settlement provides that Class Counsel, or the Settlement Administrator, will mail the Notice by first class mail, postage prepaid, to the Settlement Class Members at their last known addresses as set forth on Schedule 1 to the Settlement, unless updated through the efforts of Class Counsel.  The mailing and the fairness hearing will be timed so that the Class Members will have not less than 35 days from the date of the mailing to ensure that Class Counsel has received their opt-out or objection to the Settlement Agreement.  The Parties submit that giving notice in this manner satisfies the "best notice practicable" test.  In the case of any returned envelopes, Class Counsel or the Settlement Administrator will forward to such corrected addresses to the extent they may be obtained.

The Court Should Preliminarily Approve the Settlement Agreement<br>Pursuant to Fed. R. Civ. P.   23

17.     "'Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing'….If the court preliminarily approves the settlement, it then must direct the preparation of notice informing class members of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing.'"  *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *4-5 n.1 (S.D.N.Y. June 22, 2007) (quoting *In re Initial Pub. Offering Sec. Litig.*, No. 01 Civ. 3020, 243 F.R.D. 79, 2007 U.S. Dist. LEXIS 19632, 2007 WL 656880, at *4-5 (S.D.N.Y. Feb. 28, 2007)).  At the subsequent fairness hearing, class members may formally object to the proposed settlement.  *See In re Drexel Burnham Lambert Group*, 130 B.R. 910, 924 (S.D.N.Y. 1991) ("Notice of the

Settlement and hearing thereon is required so as to allow the Class members an opportunity to object to the fairness, reasonableness or adequacy of the Settlement.").

18.    "'In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.'"    *In re Stock Exchs. Options Trading Antitrust Litig.*, 99 Civ. 0962 (RCC), MDL No. 1283, Master Docket No. M-21-79 (RCC), 2005 U.S. Dist. LEXIS 13734, at *16-17 (S.D.N.Y. July 8, 2005) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

19.    The Settlement Agreement has no obvious deficiencies and falls well within the range of reason.  Further, each of the above-cited factors favors preliminary approval of the Settlement Agreement.

20.    First, the Settlement is the result of good faith, arm's length negotiations between capable adversaries.  The Parties have been in discussions with respect to a potential compromise of the WARN Act litigation for months and

both Parties are represented by counsel with extensive experience and expertise in employment and class action matters.

21.    Second, the Parties fully explored the strengths and weaknesses of the claims through discovery and informal disclosure.

22.    Third, Class Counsel have collectively been appointed as class counsel in over one hundred (100) WARN Act cases.  Class Counsel has the experience and skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate.  They have exercised that judgment in this case with respect to the Settlement Agreement.

23.    Accordingly, the Court should preliminarily approve the Settlement Agreement.

### The Court Should Finally Approve the Settlement As Fair, Reasonable And Adequate To The Settlement Class At The Fairness Hearing Pursuant To Fed. R. Civ. P.  23

24.    The Court should set a Fairness Hearing that, subject to the Court's calendar, would be held within sixty (60) days of entry of the Preliminary Settlement Order. At the Fairness Hearing, the Court should finally approve the Settlement.

25.    This Court has broad discretion in determining whether the proposed Settlement Agreement should be approved. Settlement of litigation is strongly favored as a matter of public policy.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).

26.     Appellate review of a challenge to the District Court approval of a class action settlement is limited. *See Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 246-47 (2d Cir. 2007).  "A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion."  *Wal-Mart Stores, Inc.*, 396 F.3d at 116-17.  There is a strong judicial policy in favor of settlement in order to conserve scarce resources that would otherwise be devoted to protracted litigation.  *Bennett v. Behring Corp.*, 737 F. 982, 986 (11th Cir. 1984).  The trial court is entitled to rely upon the judgment of experienced counsel for the parties. The "opinion of experienced counsel carries great weight in approval of settlements."  *Selby v. Principal Mut. Life Ins. Co.*, 98 Civ. 5283 (RLC), 2003 U.S. Dist. LEXIS 21138, at *18 (S.D.N.Y. Nov. 17, 2003) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  "To evaluate the substantive reasonableness of a settlement, [the Court] appl[ies] the *Grinnell* factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Mba v. World Airways, Inc.*, 369 Fed. Appx. 194, 197 (2d Cir. 2010) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),

abrogated on other grounds by *Goldberger v. Integrated Res.*, Inc., 209 F.3d 43, 47 (2d Cir. 2000)).

27.    As set forth above, the WARN Act litigation would have been complicated, protracted and expensive. Further, both sides faced risks in light of the allegations and defenses asserted in the WARN Act Litigation.  The proposed Settlement falls within the range of reasonable litigation possibilities, since the Defendant (if found to be liable) could be hit with a judgment of more than $600,000.  However, the risk that the Class Representatives would be unable to collect on any judgment, even if successful, was present because the Defendant admitted that it is insolvent.  And if Defendant prevailed on its defenses, the Class would receive nothing.  The Settlement Agreement allows the Parties to avoid these risks.  The Class Representatives support the Settlement and Class Counsel believes that the bulk of the other proposed Settlement Class Members will have a favorable reaction to the Settlement Agreement and not object to it.

28.    The Settlement Agreement is therefore in the best interest of the parties.

29.    Accordingly, the Parties respectfully request the Court to schedule a hearing for the final consideration and approval of the Settlement Agreement.

WHEREFORE, the Parties respectfully request that the Court: (i) enter the proposed form of Preliminary Settlement Order (attached to the Settlement Agreement as "Exhibit B"), preliminarily approving the Settlement Agreement; approving the form and manner of the Class Notice (attached to the Settlement Agreement as "Exhibit C"); (ii) schedule a Fairness Hearing for the final

consideration and approval of the Settlement Agreement within sixty (60) days of entry of the Preliminary Settlement Order and, (ii) ultimately, approve the Settlement Agreement on a final basis by entering the proposed form of Final Order (attached to the Settlement Agreement as "Exhibit D").

Jointly submitted this 26th day of March, 2021:


THE GARDNER FIRM, PC

/s/ Mary E. Olsen
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St Francis Street, Suite 103
Mobile, AL 36602
P: (251) 433-8100
F: (251) 433-8181
molsen@thegardnerfirm.com
vmccrary@thegardnerfirm.com

LANKENAU & MILLER, LLP
Stuart J. Miller (SJM 4276)
132 Nassau Street, Suite1100
New York, NY 10038
P: (212) 581-5005
F: (212) 581-2122
stuart@lankmill.com

MGQ Law, LLC
Maria Garcia-Quintner (ct27568)
246 Post Rd East, 2nd Floor
Westport, Connecticut 06880
(203) 836-3336
MGQ@MGQLaw.com

Counsel   for   Plaintiffs   and   the
Settlement Class


PULLMAN & COMLEY LLC

/s/ Monte E. Frank
Irve J. Goldman (ct02404)
Monte E. Frank (ct13666)
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006
P: (203) 330-2262
F: (203) 576-8888
mfrank@pullcom.com

Counsel for Defendant Prostar

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

/s/ Mary E. Olsen
Attorney's Signature